IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3029-FL

| | | |
|---|---|---|
| T. THORNE-EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CHARLES SANDERS; IRVIN RYAN, | ) | |
| JR.; LAWRENCE SOLOMON; AND | ) | |
| ROBERT C. LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) of defendants Robert C. Lewis, Irvin Ryan, Jr., Charles Sanders, and Lawrence Solomon (collectively referred to as "defendants") (DE 22), to which plaintiff responded. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion.

## BACKGROUND

Plaintiff, a state inmate, is an adherent of the Moorish Science Temple of America, which is a religion that is recognized by the North Carolina Department of Public Safety ("DPS"). Compl. p. 3. On December 5, 2011, plaintiff filed a grievance requesting "to annex-El to [his] name via OPUS and remove the disrespectful Race: Black off [his] NC DOC, DOP Identification Card. Issue New [R]evised I.D. Card in name of Terry Thorne-El, Race: Asiatic." Compl. Attach. p. 2. In response, DPS added the name plaintiff requested to his DPS record as an alias, but refused to

remove the racial identifier black from his identification card on the grounds that black was the racial identifier appearing on his criminal judgment and commitment. Compl. Attach. p. 4.

On February 6, 2012, plaintiff filed this action pursuant to 42 U.S.C. § 1983, challenging the designation of his race as black on his DPS identification card. Plaintiff suggests in his complaint that such a designation violates his Moorish religion. As relief, plaintiff requests that the racial identifier black be removed from his DPS identification card. Plaintiff also requests monetary damages.

On October 17, 2012, defendants moved to dismiss plaintiff's action pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The matter was fully briefed.

## DISCUSSION

A.  Motion to Dismiss

   1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations

2

omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

2. Analysis

Defendants raise the defense of qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first determines whether DPS's refusal to change plaintiff's nationality or race in the official prison records, including his DPS identification card, violates the First Amendment. The Free Exercise clause of the First Amendment, made applicable to the states through the Fourteenth Amendment to the United States Constitution, provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. 1; Goodall by Goodall v. Stafford County School Bd., 60 F.3d 168, 170 (4th Cir. 1995). To state a § 1983 claim based upon an inmate's First Amendment right to the free exercise of his religion, the inmate must prove that he held a sincere religious belief, as opposed to a secular preference, and that the official action or regulation substantially burdened his exercise of that belief. See Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). Even a prison policy that substantially burdens an inmate's ability to practice his

3

religion withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89-91 (1987).

In this case, plaintiff does not allege how DPS's race or nationality classification system substantially burdens the practice of his Moorish religion. Furthermore, the manner in which "prison officials choose to organize their records is quintessentially an administrative matter in which the courts should not intervene." Barrett v. Virginia, 689 F.2d 498, 503 (4th Cir. 1982) ("[T]he mere fact that correctional authorities maintain a prisoner's records in the name he used when convicted implicates no constitutional right."). Indeed, this court previously has held that prison officials' refusal to change nationality or race in official prison records, under similar alleged circumstances, does not constitute a constitutional violation. See Anderson-El v. Chief of Auxiliary Service, No. 5:11-CT-3170-D, 2012 WL 5305782, at *1 (E.D.N.C. May 22, 2012), aff'd, 477 F. App'x 142 (4th Cir. Sept. 28, 2012). Based upon the foregoing, plaintiff has not alleged a constitutional violation, and defendants are entitled to qualified immunity for this claim.

To the extent plaintiff challenges the use of his religious name as a alias on his DPS identification card, plaintiff again fails to state a constitutional violation, as prior rulings of this court and others addressing this issue make clear. See Ali v. Bennett, No. 5:04-CT-948-FL, 2006 WL 4148008, at *2-3 (E.D.N.C. May 25, 2006), aff'd, 204 F. App'x 321 (4th Cir. Nov. 6, 2006); United States v. Hamrick, No. 3:90cr12, 2013 WL 1867406, at *2-3 (E.D. Va. May 2, 2013) ("Even when an inmate changes his legal name, the BOP may require identification by both the new religious name and committed name without constitutional implications.") (citation omitted)); Ryidu-x v. Wolfe, No. WDQ-11-0358, 2012 WL 346629, at *2 (D. Md. Jan. 31, 2012) (citing Malik v. Brown,

4

71 F.3d 724, 727 (9th Cir. 1995)); Green v. Beck, No. 5:10-CT-3003-D, 2012 WL 1711326, at *3 (E.D.N.C. May 15, 2012) ("A prison policy which require[s] that the name listed on a prisoner's court commitment is the primary name for identification through the [prison] database . . . is reasonably related to security because it pertains to identity, and does not violate the First Amendment.") (citations omitted). Because plaintiff has not stated a constitutional violation, defendants are entitled to qualified immunity for this claim as well.

## CONCLUSION

Based upon the foregoing, defendants' motion to dismiss (DE 22) is GRANTED, and the Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 20th day of June, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge